# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re:   RONALD ZIEMANN,                                         No. 11-05-11276 MA

    Debtor.

## ORDER ON CONFIRMATION OF DEBTOR'S AMENDED CHAPTER 11 PLAN

THIS MATTER is before the Court on confirmation of Debtor's First Amended Plan of Reorganization ("Plan").  *See* Docket # 167.[1]  The United States of America, Internal Revenue Service; the State of New Mexico, Taxation and Revenue Department; and Paulette DePascal each objected to confirmation of Debtor's Plan.  *See* Docket # 219, #220, and #221.  At the continued hearing on confirmation, Paulette De Pascal, by and through her attorney of record, George Moore, maintained her objections to confirmation, including her contention that the Plan violates the absolute priority rule found in 11 U.S.C. § 1129(b)(2)(C)(ii).[2]   Upon review of the

---

[1] Following the final hearing on confirmation of Debtor's Plan, held on May 1, 2007, the Court entered an Order Respecting Confirmation of Debtor's First Amended Plan of Reorganization ("Order") which deferred a final determination on confirmation of Debtor's Plan pending the entry of an order in the dissolution of marriage proceedings between the Debtor and Paulette DePascal in Second Judicial District Court Case No. DM-2004-04503 ("State Court Dissolution Proceeding") determining the amount of attorneys' fees, if any, Debtor would be required to pay.  *See* Docket # 237.  An order was entered in the State Court Dissolution Proceeding which awarded Ms. DePascal attorney's fees in the amount of $10,000.00 and ordered Respondent (Debtor) to pay the fees in full by December 31, 2007. (*See* Docket # 260, Exhibit A).  Debtor filed a motion seeking to modify the Plan to provide for payment of the attorneys' fees awarded in the State Court Dissolution Proceeding. (*See* Debtor's Motion to Determine Priority, to Clarify to Whom the Payment Should Be Made on the Award of Attorney's Fees Ordered by the Bernalillo County Domestic Relations Court and to Modify Debtor's Plan of Reorganization ("Motion to Modify") -  Docket # 260).  The Court denied the Motion to Modify on January 10, 2008. (*See* Docket # 283).

[2] That section provides:
>  For purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>     . . . .

1

Plan, the ballots, and the record of this proceeding, and being otherwise sufficiently informed, the Court finds that, while the Plan appears to violate the absolute priority rule inasmuch as the Debtor will retain an interest in property even though the Plan does not guaranty payment of all unsecured creditors in full, the absolute priority rule is not implicated in this case because Debtor was not forced to proceed to confirmation under the cramdown provisions found in 11 U.S.C. § 1129(b). Ms. DePascal's vote to reject the Debtor's plan cannot be counted as she did not hold an allowed (or temporarily allowed) claim as of the date for balloting. Consequently, there is no rejecting, impaired class of creditors, and Debtor may proceed to confirmation under 11 U.S.C. § 1129(a). With the modifications to the plan agreed to by Debtor's counsel at the final hearing on confirmation, the Court will confirm Debtor's plan.

## DISCUSSION

A. <u>Whether Ms. DePascal's Vote to Reject Plan is Valid</u>

Confirmation of a Chapter 11 plan of reorganization is governed by 11 U.S.C. § 1129, and requires, among other things, that the plan be accepted by at least one impaired class of claims if the plan includes impaired classes of claims. 11 U.S.C. § 1129(a)(10). Acceptance of a plan by a class is determined as follows:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than an entity designated under subsection (e) of this section, that hold at least two-thirds

---

      (C) With respect to a class of interests --
          . . . .
          (ii) the holder of any interest that is junior to the interests of such
          class will not receive or retain under the plan on account of such
          junior interest any property.
11 U.S.C. § 1129(b)(2)(C)(ii).

2

Case 05-11276-m11    Doc 287    Filed 02/01/08    Entered 02/01/08 09:57:11 Page 2 of 9

in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

Only holders of allowed claims, or claimants whose claims have been objected to but who have been granted temporary allowance of their claim for voting purposes, may vote to accept or reject a Chapter 11 plan. 11 U.S.C. § 1126(a) ("The holder of a claim or interest allowed under section 502 of this title may accept or reject a plan."); Rule 3018(a), Fed.R.Bankr.P.[3] Claims are deemed allowed upon the filing of a proof of claim, unless a party in interest, including the debtor, objects. 11 U.S.C. § 502(a).

In this case, Paulette DePascal filed three proofs of claim, and the Debtor filed objections thereto. *See* Claims Register, Claim Nos. 9., 10., and 14.; *See* Docket # 203 - Debtor's Objections to Claims and Deadline to File Responses Thereto, filed February 9, 2007. Ms. DePascal did not seek to have her claim(s) temporarily allowed for purposes of voting on the Debtor's Chapter 11 plan of reorganization in accordance with Rule 3018(a), Fed.R.Bankr.P.

Ballots accepting or rejecting Debtor's Plan were to be submitted by April 20, 2007. *See* Order Approving Disclosure Statement and Fixing Time for Submitting Acceptance or Rejection of First Amended Plan and Notice of Confirmation Hearing and Notice of Deadline for Filing Complaints Objecting to the Discharge of the Debtor (Docket # 206). Ms. DePascal voted to reject the Debtor's Plan. But at that time, because the Debtor had objected to Ms. DePascal's

---

[3]Rule 3018(a), Fed.R.Bankr.P. provides, in relevant part:
> Notwithstanding objection to a claim or interest, the court after notice and a hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan.
> Rule 3018(a), Fed.R.Bankr.P.

3

claims, Ms. DePascal did not hold an allowed claim, nor did she hold a temporarily allowed claim for purposes of voting.[4] Thus, Ms. DePascal's ballots may not be counted in determining acceptance or rejection of Debtor's Plan. *See Jacksonville Airport, Inc. v. Michkeldel, Inc.,* 434 F.3d 729, 731 (4th Cir. 2006) (finding that 11 U.S.C. § 1126(a) and 11 U.S.C. § 502 "allow only holders of claims to which no party has objected to vote on Chapter 11 plans[ ]" and affirming district court's determination that creditor whose claim had been objected to was not permitted to vote on debtor's chapter 11 plan.)

    B. <u>Whether the Absolute Priority Rule Applies</u>

Debtor's Plan provides for the formation of the Ziemann Asset Trust, to be funded with all of the Debtor's dental equipment, office furnishings, the office condominium, all assets used in the Debtor's business, all accounts receivable, and all future income from the Debtor's business, until termination of the Ziemann Asset Trust[5] and the Creditor's Trust.[6] The purpose of the Creditor's Trust is to pay the unsecured creditors in Class 7, and will be funded from the sale of certain assets, plus $500.00 or more per month, for the first forty-eight months, plus an additional $400.00 or more for the next twenty-four months from the Ziemann Asset Trust. *See* Plan, Article 4 (providing that The Ziemann Asset Trust shall make all payments to the Creditor's Trust for Class Seven); and Article 5. The Plan provides that all assets to be contributed to the Ziemann Asset Trust will be "irrevocably transferred to the Trustee of the

---

[4]The Debtor's objections to Ms. DePascal's claims were ultimately resolved by stipulation, but not until *after* balloting. (*See* Docket # 262 - Stipulated Order Allowing in Part and Disallowing in Part the Claims of Paulette DePascal, entered October 19, 2007).

[5]*See* Plan, Article 1, ¶ 40, and Article 4.

[6]*See* Plan, Article 1, ¶ 15, and Article 5.

4

Ziemann Asset Trust." Plan, Article 4.3. But once all payments from the Creditor's Trust have been made, the assets in the Ziemann Trust will revest in the Debtor and all claims of Class 7 creditors will be deemed satisfied.[7] Ms. DePascal suggests that these provisions violate the absolute priority rule.

Under the absolute priority rule, unless a dissenting class of unsecured creditors is paid in full, junior interests may not receive or retain any property interest in the debtor.[8] The absolute priority rule "is consistent with the general principle that the assets of an entity should be distributed to pay the entities' creditors before any distribution to its equity interest holders." *In re SLC Ltd. V,* 137 B.R. 847, 850 (Bankr.D.Utah 1992)(citing *In re Bryson Properties. XVIII*, 129 B.R. 440, 446-47 (Bankr.M.D.N.C.1991)). "Interest" within the context of the absolute priority rule includes an individual debtor's ownership interest in a business he or she operates as a sole proprietorship, which entitles the debtor to maintain control over his or her enterprise and

---

[7]*See* Plan, Article 4, ¶ 4.8:
>Upon completion of the Plan, meaning all payment to pre-petition creditors of their allowed claims, including all payment so [sic.] the Creditor's Trust, all assets in the Ziemann Asset Trust shall be revested in Ronald W. Ziemann, or his assignee. Plan, Article 4, ¶ 4.8.

Plan, Article 3, ¶ 3.9(14):
>Distributions from the Creditor's Trust [to Class 7 unsecured creditors] shall continue until all of the assets in the Pool of Assets are distributed, or all creditors to receive payments have filed satisfaction of claims, or after five (5) years after confirmation whichever occurs first.

Plan, Article 6, ¶ 6.2:
>The full payment, distribution and other provisions contained in the Plan relating to each allowed claim shall be in complete satisfaction of such allowable claim . . . .

[8]*In re Dean,* 166 B.R. 949, 954 (Bankr.D.N.M. 1994)(citation omitted).

earn future profits.[9]

Debtor's Plan does not ensure that unsecured creditors will be paid in full, yet the property "irrevocably" transferred to the Ziemann Asset Trust will revest in the Debtor upon completion of all payments called for under the Plan. These provisions appear to violate the absolute priority rule. But the requirement that the plan satisfy the absolute priority rule is found in 11 U.S.C. § 1129(b)(2)(B)(ii), and, therefore, only arises when there is a rejecting, impaired class of creditors. In other words, the absolute priority rule only arises in cramdown situations.[10] Thus minority dissenting creditors cannot object to confirmation based on the absolute priority rule. *Winters,* 99 B.R. at 663. Because Ms. DePascal was not entitled to vote, her rejection of the Plan does not create an impaired, rejecting class of creditors. The absolute priority rule is, therefore, inapplicable unless there is a rejecting, impaired class of creditors without counting the votes of Ms. DePascal.

---

[9] *See In re Drimmel,* 135 B.R. 410, 414 (D.Kan. 1991), *aff'd, Unruh v. Rushville State Bank of Rushville, Mo.,* 987 F.2d 1506 (10th Cir. 1993) (noting that "'interest' includes the interest of a sole proprietor in a sole proprietorship" (citing 5 U.S. Code Cong. & Admin. News 5787, 6436, 6477 (1978)) and finding that "debtors' proposed retention of control over their businesses and right to potential future profits is "property" for the purposes of the absolute priority rule.").

[10] *See Pennbank v. Winters (In re Winters),* 99 B.R. 658, 663 (Bankr.W.D.Pa. 1989)(noting that the absolute priority rule is only applicable "when the proponent of the plan seeks to 'cram-down' the plan under the alternative confirmation standard contained in § 1129(b) on a *class* that is impaired and has rejected the plan.")(emphasis in original); *In re Greystone III Joint Venture,* 102 B.R. 560, 574 (Bankr.W.D.Tex. 1989), *aff'd,* 127 B.R. 138 (W.D.Tex. 1990), *rev'd on other grounds,* 995 F.2d 1275 (5th Cir. 1991)("[a]bsolute priority is preserved as a prerequisite to confirmation only in the narrow circumstance of 'cram-down,' or confirmation over the objection of a dissenting class of creditors, and then only from the dissenting class down.")(citing 11 U.S.C. § 1129(b)(2)(B) and H.R.Rep. No. 595, 95th Cong, 1st Sess 413 (1977)). *In re United Marine, Inc.,* 197 B.R. 942, 948 (Bankr.S.D.Fla. 1996) ("[I]n the context of a *consensual* plan, § 1129(a) contains no reference to the absolute priority rule. It appears only in § 1129(b).")(emphasis in original).

Case 05-11276-m11    Doc 287    Filed 02/01/08    Entered 02/01/08 09:57:11 Page 6 of 9

C. Whether Debtor has an Accepting, Impaired Class of Creditors

Debtor's Plan includes the following impaired classes of claims: Class 6 - Administrative Convenience Claims consisting of allowed unsecured claims of $1,000.00 or less and any unsecured claimant who consents to reduce its claim to $1,000.00 or less in full satisfaction of its claim; and Class 7 - Allowed Claims of General Unsecured Creditors. The Tally of Ballots filed by the Debtor and supported by the ballots reflects the following votes in Class 7, disregarding the votes of Ms. DePascal:

| | | |
|---|---|---|
| Dex Media | $41,582.34 | Accept |
| USAA Savings Bank | $14,000.00 | Accept |
| New Mexico Taxation and Revenue Dept. | $ 5, 769.39 | Reject |

In determining acceptance of classes, only creditors who vote are counted.[11] Based on the creditors who voted, and in accordance with 11 U.S.C. 1126(c), a simple majority of the eligible creditors voting in Class 7 and holding more than two-thirds of the total claims accepted the Debtor's Plan. Debtor has, therefore, satisfied 11 U.S.C. § 1129(a)(10) with this accepting, impaired class of claims.[12]

D. Other Modifications.

Based on the acceptance of an impaired class of claims and based on the Debtor's testimony offered at the final hearing on confirmation, Debtor's Plan meets the requirements for confirmation under 11 U.S.C. § 1129(a). Debtor has been making the payments called for under the Plan since the final hearing on confirmation and the Plan; therefore, the Court finds that the

---

[11] 11 U.S.C. § 1126(c); 7 Collier on Bankruptcy ¶ 1126.04 (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2006)( "[O]nly clams actually voted count in determining whether the requisite majorities in number and amount are met.")

[12] No creditors in Class 6, the other impaired class, voted to accept or reject the Plan.

7

Plan is feasible. The attorneys' fees awarded as part of the State Court Dissolution proceeding do not render the Plan infeasible. As a condition to confirmation, the Debtor represented at the final hearing on confirmation that he agreed to certain modifications requested by the State of New Mexico, Taxation and Revenue Department ("NMTR"), and that he agreed to delete those portions of the Plan, found mainly in connection with Class 8, that attempt to address potential post-petition domestic relations claims that may arise from the State Court Dissolution proceeding. Debtor is required to make these modifications to the Plan as a condition to confirmation.

In addition, NMTR objected to the strict default provisions contained in Article 6,¶ 6.6, which provides generally, as follows:

> Debtor has a 15 day grace period within which to make any payment provided under the plan; if payment is not made within 15 days, claimant(s) are required to give written notice of default to the Debtor and to Brian Rowe, as Trustee of the Ziemann Asset Trust with 15 days to cure. However, either the Debtor or the Trustee may cure the default and reinstate the plan within 30 days after the 15 day cure period by tendering the full amount due, plus interest, plus a 5% penalty.

No testimony was offered to show that the default provisions were unreasonable per se. In fact, creditors voted to accept them.

With the concessions agreed to by the Debtor as outlined above, the Court finds that the Plan is confirmable.

WHEREFORE, IT IS HEREBY ORDERED, that the Debtor shall submit an order confirming plan, getting approval as to form from all objecting parties, within fifteen days.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

8

Date entered on docket: February 1, 2008

COPY TO:

Louis Puccini, Jr
Attorney for Debtor
PO Box 30707
Albuquerque, NM 87190-0707

James C. Jacobsen
Attorney for NM Taxation and Revenue Department
111 Lomas NW, Suite 300
Albuquerque, NM 87102

George M Moore
Attorney for Paulette DePascal
PO Box 216
Albuquerque, NM 87103-0216

Manuel Lucero
Assistant U.S. Attorney
PO Box 607
Albuquerque, NM 87103

Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103